**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN HIGGINS,**

                    **Plaintiff,**           **1:06-CV-689
                                                            (GLS/DRH)**

                v.

**CONSOLIDATED RAIL CORPORATION;**
*and* **CSX CORPORATION,**

                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

JOHN HIGGINS
*Pro Se*
P.O. Box 354
Bearsville, NY 12409

**FOR THE DEFENDANTS:**

McNamee, Lochner Law Firm      SCOTT A. BARBOUR, ESQ.
677 Broadway
Albany, NY 12207-2503

**Gary L. Sharpe
U.S. District Judge**

**DECISION AND ORDER**

**I. Introduction**

Plaintiff *pro se*[1] John Higgins ("Higgins") filed this action against his prior employers, Consolidated Rail Corporation and CSX Corporation (collectively "defendants"), under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* (See Dkt. No. 3.) Higgins claims that defendants' negligence caused him to develop carpal and cubital tunnel syndrome. Pending is defendants' motion for summary judgment under FED. R. CIV. P. 56. (See Dkt. No. 27.) For the reasons that follow, the motion is denied.

**II. Facts and Procedural History[2]**

Higgins began his employment with Conrail in 1990 as a brakeman operating out of northern New Jersey. (See Def. SMF ¶ 1; Dkt. No. 27.) Throughout his career, Higgins was employed by the defendants as a brakeman, conductor and engineer. (See Def. Ex. C at 35; Dkt. No. 27.)

---

[1] Higgins' counsel was permitted to withdraw on May 18, 2007 pursuant to N.D.N.Y. L.R. 83.2(b), as Higgins disagreed with his counsel regarding litigation strategy. (See Dkt. No. 20.)

[2] Higgins has failed to file a memorandum of law or responsive 7.1 statement in opposition to defendants' motion for summary judgment, violating N.D.N.Y. L.R. 7.1(a). As both the court and opposing counsel have instructed Higgins that such papers are required, the court deems defendants' 7.1 statement admitted where supported by the record. (See Dkt. Nos. 27:16; 28.)

2

From 2000 or 2001, he worked exclusively as a yard engineer, moving train cars in CSX's Selkirk Yard through use of a yard locomotive.  *See id.* at 52.  The locomotives were set up so that the engineer would operate the controls using his left hand.  *See id.* at 40-41.  Between operation of the throttle, brakes, bell, horn, light switches and valves, Higgins estimated that he would make hundreds to thousands of repetitive motions per shift with his left hand.  *See id.* at 40-41, 52-53.

In August 2004 Higgins began to notice pain in his left wrist.  Between February and April 2005, his treating physician, Dr. Reynaldo Lazaro ("Dr. Lazaro"), diagnosed him with work related carpal and cubital tunnel syndromes.  (See Def. Exs. E, H; Dkt. No. 27.)  In a subsequent report, ergonomics expert Dr. Stephen Morrissey ("Dr. Morrissey") also concluded that Higgins' carpal and cubital tunnel syndromes were caused by his exposure to ergonomic risk factors in the performance of his job functions.  (See Def. Ex. I; Dkt. No. 27.)  Defendants have countered with expert reports stating that the work conditions and responsibilities of a yard engineer are insufficient to cause Higgins' injuries.  (See Def. SMF ¶¶ 16-24; Dkt. No. 27.)  As a result of his disability, Higgins has not worked since March 2005.  *See id.* at ¶ 7.  He commenced this FELA action on June 5,

3

2006 and filed an amended complaint on July 7.  (See Dkt. Nos. 1, 3.)

### III. Standards of Review

### A. Summary Judgment

The standard for the grant of summary judgment is well-established, and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle,* 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### B. Federal Employers' Liability Act

FELA is a broad remedial statute that must be construed liberally in order to effectuate its purposes.  *Marchica v. Long Island R.R. Co.,* 31 F.3d 1197 (2d Cir.1994).  Under FELA, a railroad engaged in interstate commerce is liable to "any person suffering injury while he is employed by [the railroad] ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of [the railroad]." 45 U.S.C. § 51.  "FELA is not a strict liability statute, and the fact that an employee is injured is not proof of negligence."  *Williams v. Long Island R.R. Co.,* 196 F.3d 402, 406 (2d Cir. 1999).  As such, a plaintiff must still "prove the common law elements of negligence: duty, breach, foreseeability, and causation."  *Tufariello v. Long Island R. Co.,* 458 F.3d

4

80, 87 (2d Cir. 2006). However, the Second Circuit "construes the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation." *Williams*, 196 F.3d at 406. Thus, "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996).

## IV. Discussion

### A. Expert Admissibility

The court first addresses defendants' contention that the opinions of Drs. Lazaro and Morrissey must be excluded as unreliable, thus rendering Higgins unable to meet his burden of proof under FELA.[3] (See Def. Br. at 19-24; Dkt. No. 27.)

A district court determining the admissibility of expert testimony has a gate-keeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). "[T]he standards for determining the reliability and credibility of expert testimony are not altered

---

[3] It is not clear to the court whether or not Drs. Lazaro or Morrissey have been disclosed as expert witnesses. *See* N.D.N.Y. R. 26.3. However, given that defendant's arguments center on the unreliability of Drs. Lazaro and Morrissey's expert opinions, the court assumes that they have been so disclosed.

5

[in FELA cases] merely because the burden of proof is relaxed." *Wills v. Aerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004).  FED. R. EVID. 702 provides that an expert's opinion is reliable: "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[4]  Within these parameters, district courts "have considerable leeway in deciding ... how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co.*, 526 U.S. 137, 152 (1999).

### 1.  Doctor Lazaro

Dr. Lazaro has submitted an affidavit stating that Higgins' carpal and cubital tunnel syndromes are the result of his operation of locomotive control panels at least 250 times a day with his left hand.  (See Def. Ex. H; Dkt. No. 27.)  This affidavit essentially reiterates similar findings in Dr. Lazaro's treatment records.  (See Def. Ex. E; Dkt. No. 27.)  However,

---

[4]Additionally, courts "may consider a number of other factors in determining the reliability of the proffered testimony, including: (1) whether a theory or technique has been or can be tested; (2) 'whether the theory or technique has been subjected to peer review and publication;' (3) 'the technique's known or potential rate of error' and 'the existence and maintenance of standards controlling the technique's operation;' and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community."  *Wills,* 379 F.3d at 48 (citing and quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)).

6

Higgins has failed to produce any evidence of the principles and methods Dr. Lazaro applied in reaching his opinions. In the materials before the court, Dr. Lazaro simply recites Higgins' job requirements, and concludes that such requirements must be the cause of his carpal and cubital tunnel syndromes. Thus, as "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," Dr. Lazaro may not testify as an expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Nonetheless, the court notes that Dr. Lazaro is not precluded from testifying as a treating physician as to the existence of Higgins' carpal and cubital tunnel syndromes. *See Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 269 (6th Cir. 2001). Additionally, Dr. Lazaro may testify as to what he has found, through his experience, to have generally caused carpal and cubital tunnel syndromes in his patients, and thus what he diagnostically determined to be cause and effect. *Id.*

### 2. Doctor Morrissey

Dr. Morrissey's report opines that: (1) Higgins' carpal and cubital tunnel syndromes were the direct and foreseeable result of his work as a yard engineer; (2) that in the course of his work, Higgins was frequently

7

exposed to ergonomic risk factors associated with development of carpal and cubital tunnel syndromes; and (3) that these risk factors are well recognized in medical, scientific and industry literature along with feasible interventions such as improved seating and console design.  (See Def. Ex. I; Dkt. No. 27.)  To develop these opinions Dr. Morrissey "reviewed [Higgins'] medical records, [his] interview notes ... and relevant medical, scientific, ergonomics and railroad references as well as [his] own understanding of the job of a yard engineer." *Id*.  Dr. Morrissey then described Higgins' job requirements and broke down his exposure to ergonomic risk factors on a function by function basis.  *Id*.

Generally speaking, defendants do not appear to take issue with Dr. Morrissey's use of an ergonomic risk factor analysis; indeed, one of their experts utilizes such a method.  (See Def. Ex. J; Dkt. No. 27.)  Rather, defendants initially object that "all opinions were reached ... solely through interviews with the plaintiffs."  In this vein, it is pointed out that several courts have rejected expert causation opinions which are based solely on the temporal proximity between a plaintiff's injury and a purported cause.[5]

---

[5]While defendants also object to Dr. Lazaro's report on grounds that he failed to eliminate alternative causes of Higgins' injuries, it is unclear whether they are alleging a similar defect in the report of Dr. Morrissey.  In any event, Dr. Morrissey acknowledged that Higgins suffered a broken left elbow when he was 19, but seemingly dismissed such injury as the

8

*See, e.g., Schmaltz v. Norfolk & W. Ry. Co.*, 878 F. Supp. 1119 (N.D. Ill. 1995). Here, however, Dr. Morrissey's report gives no indication that his causation opinion is based merely on the temporal congruity between Higgins' injury and his work. Rather, a cursory review of the report reveals that his conclusions were drawn through analysis of Higgins' exposure to ergonomic risk factors while working as a yard engineer. Admittedly, this analysis would carry more weight if Dr. Morrissey had examined Higgins' work site. However, such oversights weigh on credibility in the court's opinion, not the report's admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The court also disagrees with the contention that Dr. Morrissey's report must be precluded because it fails to cite specific studies linking Higgins' occupation to carpal and cubital tunnel syndromes. Again, such studies would certainly reinforce the weight of Dr. Morrissey's ergonomic

---

cause of his carpal and cubital tunnel syndromes because Higgins had "experienced no problems with it in the subsequent 25-years." (See Def. Ex. I at 2; Dkt. No. 27.) Thus, Dr. Morrissey properly addressed potential alternative causes of Higgins' injury. *See Hardyman*, 243 F.3d at 265 (expert's testimony that playing softball or baseball could not have caused plaintiff's carpal tunnel sufficient to eliminate these activities as an alternate cause of injury).

9

assessment. However, mandating their production "essentially would foreclose plaintiff[] from recovering for [carpal and cubital tunnel syndromes] against negligent employers unless their particular job has been the subject of a national, epidemiological study on [such maladies]." *Hardyman*, 243 F.3d at 265. Thus, "while precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial, [it must be recognized that] such evidence is not always available, or necessary, ... and need not invariably provide the basis for an expert's opinion on causation." *Westberry v. Gislaved Summi AB*, 178 F.3d 257, 264 (4th Cir. 1999). Accordingly, the court rejects defendants' arguments and finds that Dr. Morrissey's report, which is clearly relevant to the issues of this case, carries sufficient indices of reliability to render it admissible.

**B.     Causation & Foreseeability**

In light of the above, the court must reject defendants' contention that Higgins' claim must be dismissed due to insufficient evidence on the critical elements of foreseeability and causation. (See Def. Br. at 9-18; Dkt. No. 27.)

"[U]nder FELA, an employer has 'a duty to provide its employees with a safe workplace,' which it has breached [only] 'if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" *Tufariello*, 458 F.3d at 87 (quoting *Ulfik*, 77 F.3d at 58).  Thus, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 117 (1963).  As to causation, the question is merely "whether the proofs justify with reason the conclusion that e[m]ployer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).  These are factual issues and "[a]s with all factual issues under the FELA, the right of the jury to pass on [them] must be liberally construed." *Gallose v. Long Island R.R.*, 878 F.2d 80, 84-85 (2d Cir. 1989).

Turning first to causation, Dr. Morrissey's report concludes that Higgins' injuries were the result of his exposure to ergonomic risk factors in his employment as a yard engineer.  (See Def. Ex. I; Dkt. No. 27.)  The report also notes that remedial measures, such as improved seating or console design could have reduced such exposure.  *See id.* at 1, 4.  These

11

opinions alone create a triable issue.[6]  However, even if the court were to exclude the report of Dr. Morrissey, an issue of fact as to causation would remain.  Due to the slight burden of proof in FELA actions, a jury may make inferences it otherwise could not.  *See Williams*, 196 F.3d at 407.  Accordingly, a jury could infer that Higgins' work functions caused his carpal and cubital tunnel syndromes based on Dr. Lazaro's permissible causation testimony as a treating physician and Higgins' description of his own symptoms and occupational requirements.  *See Hardyman*, 243 F.3d at 269.

Similarly, the evidence raises a triable issue as to foreseeability and notice.  Dr. Morrissey's report states that "Carpal Tunnel is a well recognized injury/illness in the railroad industry with [various railroads] developing programs in the early and mid 1990's to identify and then address ergonomics risk factors associated with the development of Carpal

---

[6]The court rejects defendants' claim that plaintiff must identify a specifically defective locomotive which caused his injuries. (See Def. Br. at 13; Dkt. No. 27.)  It is enough under FELA that Higgins' injury was arguably a foreseeable result of his job functions and remedial measures could feasibly have prevented the injury.  *See Munns v. CSX Trans., Inc.*, — F. Supp. 2d —, 2008 WL 4425599, at *3-4 (N.D. Ohio Sept. 27, 2008) (citing *Tufariello*, 458 F.3d at 82, for the proposition that "[a] general description of [the hazard] that caused plaintiff's injury suffices to bring a claim under the FELA").  Further, to the extent defendants' experts contradict Dr. Morrissey's description of Higgins' work conditions and requirements, the court notes this is an issue of fact not subject to resolution on summary judgment.  (*Compare* Def. Br. at 13-14; Dkt. No. 27, *with*, Def. Ex. I at 1-2; Dkt. No. 27.)

12

Tunnel Syndrome and other cumulative trauma injuries in their employees." (See Def. Ex. I at 2; Dkt. No. 27.) Further, Higgins has testified that numerous engineers have developed carpal tunnel syndrome in their left hand, apparently as a result of their job duties, and that his union gives carpal tunnel screenings. (See Def. Ex. C at 86-88, 112; Dkt. No. 27.) The court also notes that, contrary to defendants' contention, Higgins did at one point testify that he began complaining to CSX about his injuries in September or October of 2004 - almost 6 months before he ultimately left his job. See *id.* at 108.

While this evidence is admittedly thin, foreseeability has been found to exist with less. In *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir. 1975), for example, it was held that a sniper's shooting of a railroad employee at a train station in Manhattan was foreseeable based only on the fact that four prior trains had been stoned in the same area during the previous year. Thus, in the present instance, the court finds Higgins' testimony, in conjunction with Dr. Morrissey's report, creates a triable issue under FELA as to the foreseeability of Higgins' injury, and thus whether the defendants took reasonable care to address its risk. Accordingly, defendants' motion for summary judgment must be denied.

13

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment (Dkt. No. 27.) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court provide copies of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

November 21, 2008
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge